# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

EDGARDO RIVERA BORRERO     \*

Plaintiff     \*     **Civil No. 98-1268(SEC)**

v.     \*

GLADYS RIVERA CORREA, et al     \*

Defendants     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

[stamp: RECEIVED & FILED MAR 3 1 2000 OFFICE CLERK, U.S. DISTRICT SAN JUAN, P.R.]

## OPINION AND ORDER

This case is a good example of the typical thicket of claims and arguments that can flourish from a *pro se* prisoner's understandable effort to save his complaint from doom. Surprisingly, the Commonwealth of Puerto Rico Department of Justice, in representing defendants Gladys Rivera Correa and José L. Maldonado, has contributed to thicken this thicket. Pending is the Magistrate Judge's report and recommendation (**Docket # 39**) on defendants' motion to dismiss (**Docket # 21**).

**Motion to Dismiss Standard**

When a plaintiff complaining of civil rights violations is representing himself, his complaint must be read with an extra degree of solicitude. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Dismissal of a *pro se* complaint is not warranted unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'" Id. Under this generous standard, the Court takes plaintiff's allegations as true and construes them in the light most favorable to his claims. See, e.g., LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998).



**Background**

Plaintiff is an inmate at Servicios Correccionales de Puerto Rico's (SCPR) Guayama facility. On March 11, 1998, he filed this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, against defendants Gladys Rivera Correa and José L. Maldonado, Director and President, respectively, of the Commonwealth of Puerto Rico Administration of Corrections Classifications Committee, and Sarah Torres, SCPR Counselor. Plaintiff alleged that defendants arbitrarily kept him in maximum custody for three and a half years based on information concerning certain escape charges that were eventually dismissed by a Commonwealth court, but which were nevertheless erroneously maintained in his record and unduly considered in reaching a determination regarding his custodial classification, in violation of his Eighth Amendment rights. He also alleged, at least by indirect reference to numerous documents attached to his complaint, that defendants refused to reclassify him from medium to minimum custody. Plaintiff sought an order from this Court directing defendants to review his record impartially and without prejudice. (**Docket # 2**).

Defendants Rivera Correa and Maldonado subsequently moved for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a cognizable § 1983 claim (for lack of personal involvement in the alleged violation), and on qualified immunity and Eleventh Amendment grounds. (**Docket # 21**). Defendants' motion to dismiss deserves a few comments.

First. It is well settled that neither a State, a state agency nor a state official acting in her or his official capacity may be sued for damages in a 42 U.S.C. § 1983 action. See, e.g., Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698 700 (1st Cir. 1995); Johnson v. Rodríguez, 943 F.2d 104, 108 (1st Cir. 1991); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Edelman v. Jordan, 415 U.S. 651, 657 (1973). This is so because § 1983 did not abrogate an

unconsenting state's Eleventh Amendment immunity from being sued in damages in federal court.
See Quern v. Jordan, 440 U.S. 332, 341 (1979); Will, 491 U.S. at 66-67. This protection also
extends to the Commonwealth of Puerto Rico. See, e.g., Negrón Gaztambide v. Hernández Torres,
145 F.3d 410, 415 n. 7 (1st Cir. 1998); Fred v. Aponte Roque, 916 F.2d 37, 38 (1st Cir. 1990);
Ramirez v. Puerto Rico Fire Service, 715 F.2d 694, 697 (1st Cir.1983); Ezratty v. Puerto Rico, 648
F.2d 770, 776 n. 7 (1st Cir.1981). However, equitable relief is not covered by Eleventh Amendment
immunity. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139
(1993); Chaulk Serv., Inc. v. Mass. Com'n, 70 F.3d 1361 (1st Cir. 1995). Because plaintiff is
seeking only equitable relief, the Eleventh Amendment is inapposite in this case.

Second. While it is true that qualified immunity shields government officials "from liability
for civil damages insofar as their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982), qualified immunity is not available in official capacity suits, such as this one,
because an official capacity suit is actually a suit against the entity of which the official is an agent.
See Kentucky v. Graham, 473 U.S. 159, 165 (1985).

Third. Defendants embark in a discussion of the elements of a § 1983 action, focusing
primarily on their lack of personal involvement in the violations alleged by plaintiff, without first
addressing whether plaintiff has stated a violation of any federal constitutional or statutory right.
See Fournier v. Reardon, 160 F.3d 754, 756 (1st Cir. 1998) ("To succeed, a section 1983 plaintiff
must show a violation of a right secured by federal law.").

In sum, defendants' motion to dismiss appears to belong in another case. On another matter, it must be noted that as of today, defendant Torres has not answered the complaint or otherwise pleaded. Plaintiff, however, has not moved for entry of default.

Now, in his opposition to Rivera Correa and Maldonado's motion to dismiss, plaintiff asserted that these defendants were indeed personally involved in the alleged violation by pointing to their participation as government employees in the proceedings relating to his request for reclassification. Plaintiff also raised, for the first time, that he was being punished by a retroactive application of the law, in violation of the *ex-post facto* clause, U.S. Const. art. I, § 10, cl. 1.

On December 10, 1999, the Court referred this case to a Magistrate Judge for report and recommendation. On March 14, 2000, the Magistrate Judge issued his report and recommendation, and on March 28, 2000, plaintiff timely filed his objections thereto. (**Docket # 40**). Upon *de novo* review of the Magistrate Judge's report, the Court approves his recommendation of dismissal, and dismisses the complaint accordingly.

**Scope of Review**

The scope of review of a Magistrate Judge's recommendation is set forth in 28 U.S.C. 636(b)(1). This section provides that "[a] judge of the [district] court shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which [an] objection is made." Id. However, no review is required of those issues to which objections are not timely raised. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); Borden v. Secretary of Health, 836 F.2d 4, 6 (1st Cir. 1987).

**Applicable Law/Analysis**

In his brief, plaintiff specifically objects to the Magistrate Judge's statement in his report that plaintiff is serving a 108 year sentence. (**Docket # 39**, at 4). According to plaintiff, he is serving only a 102 year sentence. (**Docket # 40**, at 2). The Court takes notice of this objection, as a result of which the Magistrate Judge's reports is deemed modified in this regard. Plaintiff also objects to the Magistrate Judge's assertion in his report that plaintiff had escaped once from prison, remaining at large for approximately 21 months. (**Docket # 39**, at 5). According to plaintiff, the escape charges brought against him were dismissed by a Commonwealth court and, therefore, there is no evidence that he ever escaped. (**Id.** at 3). The response to this argument is simple. Plaintiff attempted to escape on March 4, 1988. He managed to escape on May 25, 1989, and remained at large until February 8, 1991, when he was captured. The escape charges brought against him were dismissed on March 4, 1991, on procedural grounds.[1] The fact that plaintiff was not convicted of escape, and that there is no judicial evidence thereof, does not erase the fact that plaintiff, according to prison records, once attempted to escape and later indeed escaped from prison, remaining at large for nearly two years. Thus, plaintiff's objection in this regard is simply noted, without any modification to the Magistrate Judge's report.

In his brief, moreover, plaintiff reiterates old claims and arguments, and raises a convoluted myriad of new ones. First. Plaintiff reiterates that he is being punished retroactively in violation of

---

[1] Charges were dismissed pursuant to Rule 64(n)(5) of the Rules of Criminal Procedure for the Commonwealth of Puerto Rico, P.R. Laws Ann. tit. 34, App. II, R. 64(n)(5) (1991), which establishes as grounds for dismissing an indictment the fact that "the person was detained in jail for a total period of thirty (30) days after his arrest without holding the preliminary hearing in the cases in which it should be held."

the *ex-post facto* clause. Plaintiff, however, does not present any facts supporting this claim. He does not allege that in denying reclassification defendants punished him for a previous act which was innocent when done; nor retroactively made more burdensome his punishment for the crimes of which he was convicted; nor deprived him of any defense available at the time when he committed the offenses of which he was convicted. Therefore, plaintiff has failed to state cognizable claim under § 1983 for violation of his right not to be prejudiced by the retroactive application of the law. See Collins v. Youngblood, 110 S. Ct. 2715, 2724 (1990). Accordingly, plaintiffs claim in this regard is hereby **DISMISSED**.

Second. Plaintiff keeps complaining that he was maintained in maximum security for a period of approximately three and a half years as a retaliatory measure. This assertion, however, lacks any factual support. Because under Rule 12(b)(6) standard the Court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like," LaChapelle, 142 F.3d at 508 (citation and internal quotation marks omitted), it hereby **DISMISSES** this claim.

Third. In his brief, plaintiff charges defendants with violating articles 130, 131 and 136 of the Penal Code of Puerto Rico, P.R. Laws Ann. tit. 33, §§ 4171, 4172(c), 4177(c) (1983).[2] These charges are simply absurd. On the one hand, this Court is without jurisdiction to pass judgment upon an allegation that defendants have committed an offense under the Penal Code of Puerto Rico. On the other hand, the Penal Code of Puerto Rico does not confer any federal constitutional or statutory

---

[2] Article 131 makes it a misdemeanor to unlawfully restraint of a person's liberty. See P.R. Laws Ann. tit. 33, § 4171 (1983). Article 132 makes this crime a felony when it is committed "[b]y a public official or employee in abuse of his power or acting violently." Id. § 4172(c). Article 136, on its part, makes it a misdemeanor to unduly prolong the execution of a criminal judgment. See id. § 4177(c).

AO 72A
(Rev. 8/82)

right upon plaintiff for purposes of the instant action. Therefore, these claims are also hereby **DISMISSED**.

Fourth. Plaintiff claims that defendants have violated his Eighth Amendment rights in refusing to reclassify him. The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on those convicted of crimes. See Wilson v. Seiter, 111 S. Ct. 2321, 2323 (1991). This provision also "applie[s] to some deprivations that [are] not specifically part of the sentence but [are] suffered during imprisonment." Id. Thus, some conditions of confinement may trigger a violation of the Eighth Amendment. Generally, however, the Constitution forbids "only those deprivations denying 'the minimal civilized measures of life's necessities.'" Wilson, 111 S. Ct. at 2324, quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This is the so-called objective component of the Eighth Amendment; that is, "was the deprivation sufficiently serious?" Id. But the Eighth Amendment also has a subjective component, which mandates an inquiry on a prison official's state of mind at the time of the purported deprivation. See id. Generally, in cases involving challenges to conditions of confinement, the plaintiff must demonstrate that prison officials acted with "deliberate indifference." Id. at 2326-27. In this case, the purported refusal to reclassify plaintiff from medium to minimum custody, does not constitute a "deprivation[] denying 'the minimal civilized measures of life's necessities.'" Id. at 2324. Plaintiff, moreover does not allege that defendants were deliberately indifferent to his claims. To the contrary, the documents that he has submitted to the Court clearly show that defendants have carefully addressed his grievances. Accordingly, plaintiff's Eighth Amendment claim is hereby **DISMISSED**. The only articulable claim that plaintiff presents (albeit belatedly, since he does so in his objections brief) is that defendants have violated his substantive due process rights by arbitrarily refusing to reclassify

his custodial status. The arbitrariness, according to plaintiff, lies in defendants' decision not to accord him minimum custody status on the basis of the attempted and actual escape incidents, which, as he also alleges, are being erroneously maintained in his record. Plaintiff also challenges defendants classification of his present medium custody status on the ground that although his evaluation score makes him eligible for minimum custody, defendants have exercised their lawful discretion to depart upward from this score in order to place him in medium custody status. This, in turn, has had the undesirable effect of affecting possible determinations regarding his future parole and eligibility to participate in programs such as electronic monitoring and furlough.

The threshold determination that the Court must make, of course, is whether plaintiff has a liberty interest in a custodial classification. See Coyne v. City of Sommerville, 972 F.2d 440, 443 (1992). Prior to 1995, courts had to examine the language in state statutes and regulations to determine whether a liberty interest was created. In 1995, however, the Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995) "refocused the due process inquiry away from the parsing of the mandatory/discretionary language in prison regulations and back to the nature of the deprivation, i.e., whether the restraint 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' or 'will inevitably affect the duration of his sentence.'" McGuinness v. Bubois, 75 F.3d 794, 797 n.3 (1st Cir. 1996). The holding in Sandin, however, did not preclude the possibility that a particular state regulation may indeed create a liberty interest that affords inmates due process protection. See Dominique v. Weld, 73 F.3d 1156, 1159 (1st Cir. 1996). The First Circuit has not decided whether an inmate has a protected liberty interest in custodial

classifications.[3] However, in a recent unreported opinion, it suggested that a disciplinary decision which could affect future classifications or parole decisions could implicate an inmate's liberty interest. See Figueroa v. Vose, 1996 WL 136891 (1st Cir. 1996). Be that as it may, the Court finds that, in this case, it is not necessary to decide whether plaintiff enjoys a protected liberty interest in custodial classifications, because even assuming that plaintiff does indeed have such an interest, the Court concludes that his allegations fail to state a claim entitling him to relief.

From the documents attached to plaintiff's brief objecting to the Magistrate Judge's report and recommendation it clearly appears that, as of March 3, 2000, plaintiff is no longer regarded as posing a risk of escape for purposes of his custodial classification, although his custodial status is still classified as medium, based on the seriousness of his offenses and the short time served of his minimum sentence. The Court must examine, however, whether any collateral consequences exist that would preclude a determination that this case is moot.

As to plaintiff's future eligibility of parole, no collateral consequences exist, because, as he admits, he must serve a minimum of twenty-five years of his sentence before being eligible for parole. Since, according to his own account (which is supported by the record), plaintiff has still approximately fifteen years left to be eligible for parole, the fact that he may have been unlawfully placed in maximum or medium custody does not affect him. Therefore, as to his eligibility for parole, plaintiff's medium custody classification on the basis of his risk of escape, even if arbitrary, has no collateral consequences. In this regard, this case is moot. See Powell v. McCormack, 385

---

[3] Other Circuits have. See, e.g., Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (holding that inmates do not have a protected interest in custodial classifications).

U.S. 486, 496 (1969) (explaining that a case becomes moot "when the issues presented are no longer 'live.'").

As to his eligibility for furlough, plaintiff alleges that his medium custody status affects him, because initial furlough is granted, in cases involving prison terms as long as the one he is serving, if the inmate has (1) served ten years of his sentence, and (2) has consecutively been in minimum custody for the last four years. See "Reglamento Para la Concesión de Permisos a Los Confinados Para Salir o Residir Fuera de las Instituciones Penales del Estado Libre Asociado de Puerto Rico," at 14 (Dec. 2, 1992). In this case, the documents submitted by plaintiff show that prior to March 3, 2000, defendants exercised this discretion in determining plaintiff's classification, by considering that he posed a risk of escape.

The Administration of Corrections Classifications Manual OA-87-07, Appendix C, Section II-D, at 3, 12 (hereinafter the "Classifications Manual"or the "Manual") mandates the initial classification or the subsequent reclassification of an inmate's custodial status as maximum when the inmate has a "history of escape." The Classifications Manual defines "history of escape" as comprising "any punishment (*condena*) for escape or attempt to escape occurring during the last 5 calendar years prior to the date when the [classification] evaluation is made." Id. (translation ours). The Manual further directs that "escapes . . . or attempts to escape from the institutions of the [Administration of Corrections] . . . will be considered if a law enforcement agency . . . filed formal charges against the inmate . . . ." Id. (translation ours).

Plaintiff complains that his escape and attempted escape were arbitrarily considered in his classification, because, according to his reading of the Classifications Manual, classifications technicians may only consider escapes or attempts to escape "occurring during the last 5 calendar

years prior to the date when the [classification] evaluation is made." This reading, however, is incomplete. The Manual specifically authorizes the discretionary upward increase of an inmate's level of custody by taking into consideration that "[t]he inmate has made significant threats to escape **or** has a history of escape(s) and/or attempt(s) to escape . . . ."[4] Id. at 8, 16-17 (emphasis added). The disjunctive drafting of the regulation indicates that the level of custody may be increased on account of either an inmate's history of escape and/or attempt to escape, or an inmate's significant threats to escape. The Administration of Corrections Manual of Rules to Create and Define the Functions of the Classifications and Treatment Committee In Penal Institutions (Feb. 27, 1979) further bolster this reading by specifically allowing classifications technicians to accord medium custody status to an inmate who "could represent a risk of escape, more than that which any incarcerated person represents." Id. R. 10(b)(2)(a) (translation ours).

In this case, plaintiff had attempted to escape and had actually accomplished to escape. He was thus properly regarded as having made significant threats to escape, as well as posing a risk of escape, beyond the normal risk of escape that any inmate represents. Factoring this circumstance into his classification calculus was not only not arbitrary, but was supported by the Administration of Corrections regulations. Therefore, by exercising their discretionary powers, defendants did not deny plaintiff his liberty interest without due process of law.

For the foregoing reasons, the Court concludes that plaintiff has failed to state a claim upon which relief can be granted. The Magistrate Judge's report is hereby **MODIFIED** to the extent that

---

[4] It must also be noted that when exercising this discretionary power, an inmate's history of escape may be considered, even if it relates to escapes that occurred more than five years prior to the date when the classification or reclassification is made. See Classifications Manual, at 8, 16-17.

it is inconsistent with this opinion and order.  His recommendation of dismissal is hereby

**APPROVED** and **ACCEPTED**.  Accordingly, plaintiff's complaint is hereby **DISMISSED**.

Furthermore, plaintiff is hereby **ORDERED** to refrain from filing any more documents in the

Spanish language without the Court's leave.  Judgment shall follow accordingly.

> **SO ORDERED.**

> In San Juan, Puerto Rico, this 31st day of March, 2000.

> SALVADOR E. CASELLAS
> United States District Judge